**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT, IN AND FOR LEE COUNTY, FLORIDA**

**TYLER CLEMENTS,**

**Plaintiff,**

**v.**

**CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida,**

**Defendant.**

**CASE NO.: 26-CA-**
**FLA BAR NO.: 0739685**

_______________________________________/

## COMPLAINT

Plaintiff, TYLER CLEMENTS, hereby sues Defendant, CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes. This is also an action brought under the First and Fourteenth Amendments to the United States Constitution, through and under 42 U.S.C. §1983. Attorney's fees are sought through 42 U.S.C. §1988 and Section 760.11, Florida Statutes.

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, TYLER CLEMENTS, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his disability or perceived disability, and he was retaliated against after engaging in, and after being perceived by Defendant as engaging in, activity protected by the First Amendment.

4. At all times pertinent hereto, Defendant, CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida, hereinafter "SHERIFF," has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

**CONDITIONS PRECEDENT**

5. Plaintiff has satisfied all conditions precedent to bringing this action. Plaintiff timely filed a charge of discrimination with the Florida Commission on Human Relations. More than 180 days elapsed following the filing of that charge, and Plaintiff brings this action within the time permitted by Section 760.11, Florida Statutes. No conditions precedent apply to the claims brought under 42 U.S.C. §1983.

**STATEMENT OF THE ULTIMATE FACTS**

**6.** Plaintiff began his employment with Defendant on or about August 22, 2022, and held the position of Deputy at the time of his constructive discharge on August 29, 2024.

7. Despite his stellar work performance during his employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his disability, and because he reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of, specifically, but not limited to, Sheriff Carmine Marceno, Undersheriff Holloway, Assistant Chief Deputy James Rankine, Captain Nora Galloway, Internal Affairs (IA) Major Travis Hicks, and Plaintiff's supervisor, former Sergeant Christopher Meyer.

9. At all times material hereto, Sheriff Marceno held final policymaking authority for the Lee County Sheriff's Office with respect to the hiring, assignment, discipline, investigation, retention, and separation of deputies, and with respect to the reporting of deputy separations to the State of Florida. Marceno delegated final policymaking authority over these subjects to Undersheriff Holloway and to Assistant Chief Deputy James Rankine, each of whom exercised that delegated authority with respect to the actions taken against Plaintiff. The acts, decisions, and omissions described herein were taken, directed, approved, or ratified by Marceno, Holloway, or Rankine, and therefore constitute the official policy of Defendant.

10. Plaintiff was employed as a patrol deputy. His assigned duties consisted of road patrol, responding to calls for service, traffic enforcement, investigation of suspected criminal offenses by members of the public, report writing, and related field work. Plaintiff was never assigned, tasked, trained, or expected to investigate, monitor, audit, or report upon the conduct of other law enforcement officers, upon the internal affairs of the Lee County Sheriff's Office, or upon the conduct of the Sheriff or his command staff. No such responsibility appeared in his job description, and he performed no such function in the ordinary course of his employment.

11. During his employment with Defendant, Plaintiff suffered from mental health issues, including Post Traumatic Stress Disorder (PTSD), and was recovering from a traumatic event, of which Defendant was aware.

12. In or around June 2023, Plaintiff was rightfully attempting to conduct a Driving Under the Influence (DUI) traffic stop and arrest. Sergeant Meyer, however, prohibited Plaintiff from performing the arrest due to the law enforcement relations of the suspect, Fort Myers Police Sergeant Jose Gomez, stating that if Plaintiff proceeded with the arrest, he would be reassigned to

Court Operations. Court Operations was the least favorable position for patrol deputies. Plaintiff objected to these instructions.

13. Subsequently, Plaintiff followed Meyer's instructions and did not proceed with the arrest. Thereafter, however, Plaintiff made several verbal complaints to Meyer, stating his disagreement with being directed not to make a lawful arrest due to a suspect's professional status. Notably, Meyer later informed Plaintiff that the order to stop the DUI arrest came from higher up in the chain of command and was not his personal decision.

14. From around June 2023 until around August 2024, Plaintiff began receiving frequent "personal improvement plans" in retaliation for his attempted DUI arrest of a law enforcement figure and his objection to not arresting this person. "Personal improvement plans" are used as a form of corrective action without filing official write-ups. The precise dates of these plans are reflected in records within Defendant's exclusive possession.

15. In further retaliation against Plaintiff, in or around July 2023, Defendant began changing Plaintiff's schedule, taking away his night shifts.

16. In December 2023, Plaintiff was dispatched on a call involving a child that had drowned. Upon arriving at the scene, Plaintiff began performing CPR until the paramedics arrived. This event was traumatic and Plaintiff's PTSD symptoms began shortly thereafter.

17. Additionally, Defendant further retaliated against Plaintiff by transferring his work location from the Central District to the West District with no warning or notice, despite Plaintiff's exceptional work performance.

18. On or around August 23, 2024, Plaintiff sought mental health counseling through Defendant's Employee Assistance Program (EAP) due to the December 2023 traumatic event he experienced while on duty. Plaintiff was seeking mental health treatment due to the severity of the

PTSD symptoms he had been experiencing for the last several months. Plaintiff notified his supervisor, Sergeant Brandon Marshall, via text message that he requested the EAP appointment. Subsequently, an EAP appointment was set for Plaintiff for August 26, 2024.

19. On August 26, 2024, three days after Plaintiff disclosed his deteriorating mental health and requested EAP assistance, Defendant opened an Internal Affairs investigation into Plaintiff. The Internal Affairs investigation falsely alleged "misuse of electronic devices" and "conduct unbecoming." "Conduct unbecoming" is a vague allegation that an internal affairs investigation can sustain for nearly any reason, and that is therefore susceptible to use as a pretext for punishment.

20. Further, Galloway and Hicks wrongfully misled Plaintiff into believing that he did not need legal counsel for the IA proceedings. Galloway verbally pressured Plaintiff into an immediate meeting under the impression that legal counsel was not permissible.

21. Defendant scheduled Plaintiff's Internal Affairs interrogation for August 26, 2024, the same date and time as the EAP appointment of which Defendant had been notified three days earlier. As a direct result, Plaintiff was unable to attend the EAP appointment and it was cancelled. Plaintiff did not receive the mental health treatment he had sought.

22. The Internal Affairs interrogation of Plaintiff began at approximately 4:30 p.m. on August 26, 2024, and continued until approximately 11:30 p.m.

23. A substantial portion of that interrogation had nothing to do with the stated charges. Instead, Defendant's investigators questioned Plaintiff at length regarding the identity of the person or persons within the Lee County Sheriff's Office who were providing information about the agency and about Sheriff Marceno to Michael Hollow, the father of a Lee County deputy and a candidate then running against Marceno for the office of Sheriff of Lee County.

24. The subject matter, duration, and intensity of that questioning made plain that Defendant believed and perceived Plaintiff to be one of the persons communicating information about the agency and about Marceno to Marceno's political opponent, and that Defendant's object was to identify, expose, silence, and punish deputies who were doing so.

25. Communicating with a candidate for Sheriff, or with any member of the public, about the operations of the Lee County Sheriff's Office and the conduct of the Sheriff was not within Plaintiff's job duties, was not undertaken in furtherance of any responsibility assigned to him, was not owed to his employment, and was not speech that Defendant commissioned or created. Such speech addresses matters of public concern, namely the integrity, conduct, and administration of an elected law enforcement office and the qualifications of the candidates seeking that office.

26. During the interrogation, Plaintiff informed Defendant's investigators that he was suffering from PTSD symptoms, that Defendant's scheduling of the interrogation had caused him to miss the EAP appointment he had requested for that same day, and that he had retained private counsel. Defendant continued the interrogation notwithstanding.

27. Plaintiff was advised during the course of the Internal Affairs process that Defendant intended to terminate his employment.

28. Notwithstanding Defendant's representations, Plaintiff retained private legal counsel, Attorney Michael Krohn, in connection with the Internal Affairs proceedings. Krohn informed Plaintiff that Defendant lacked grounds to pursue the misuse of electronic devices charge, which Hicks or Undersheriff Holloway admitted to Krohn. The misuse of electronic devices allegation was thereafter concluded as unfounded.

29. However, Hicks stated that they would pursue alternate means to "make an example" out of Plaintiff.

30. After the misuse of electronic devices allegation was determined to be unfounded, Defendant advised Attorney Krohn that Defendant could not sustain the pending Internal Affairs charges against Plaintiff, but that Defendant intended to review hundreds of hours of Plaintiff's body worn camera footage in order to locate some basis upon which to terminate him.

31. Defendant, through its agents, further represented to Attorney Krohn that if Plaintiff resigned, Defendant would not report adversely upon Plaintiff's separation to the Florida Department of Law Enforcement.

32. On or about August 29, 2024, Plaintiff was constructively discharged. By that date Plaintiff was suffering from PTSD symptoms of which Defendant was aware, had been prevented by Defendant from obtaining the mental health treatment he had requested, had been subjected to a seven hour interrogation directed substantially at his perceived communications with the Sheriff's political opponent, had been told that Defendant intended to terminate him, and had been told that Defendant would review hundreds of hours of his body worn camera footage until it found a basis to do so. Plaintiff was mentally unable to continue working for Defendant in light of the actions that had been taken against him. No reasonable person in Plaintiff's position would have remained in the employ of Defendant under these circumstances.

33. Notwithstanding its representation to Attorney Krohn, Defendant reported Plaintiff's separation to the Florida Department of Law Enforcement as a resignation while under investigation. That designation is false, or at a minimum conveys a false and stigmatizing impression, in that the Internal Affairs allegations against Plaintiff were unfounded and Defendant had itself acknowledged to Plaintiff's counsel that it could not sustain them.

34. Defendant's Internal Affairs file concerning Plaintiff, and Plaintiff's personnel file, are public records under the laws of the State of Florida. The stigmatizing information Defendant placed in those files, and the separation designation Defendant reported to the Florida Department of Law Enforcement, are accessible to prospective law enforcement employers, and Defendant knew and intended that they would be.

35. Defendant did not afford Plaintiff notice and an opportunity to be heard for the purpose of clearing his name, either before or after the stigmatizing designation was made and published, and Defendant has refused Plaintiff's efforts to have the designation corrected.

36. As a direct result, Plaintiff has been substantially foreclosed from employment opportunities in his chosen profession of law enforcement. Plaintiff is presently employed in law enforcement only because his current chief was willing to hire him notwithstanding the designation Defendant published.

37. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## DISABILITY DISCRIMINATION

38. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39. This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

40. Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability. During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

41. Defendant is liable for the differential treatment of Plaintiff and for the retaliation taken against him after he disclosed his disability and requested assistance for it, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

42. Plaintiff disclosed his deteriorating mental health and requested assistance for it on August 23, 2024. Three days later, Defendant opened an Internal Affairs investigation into him and scheduled the interrogation on top of the very appointment he had requested, causing him to miss it. The close proximity between Plaintiff's disclosure and Defendant's actions, together with Defendant's conduct thereafter, demonstrates that Plaintiff's disability, his perceived disability, and his request for assistance were motivating factors in the adverse actions taken against him and in his constructive discharge.

43. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

44. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination.

45. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment under the laws enumerated herein.

46. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive and equitable relief.

**COUNT II**
**FIRST AMENDMENT RETALIATION**
(42 U.S.C. §1983)

47. Plaintiff realleges and incorporates paragraphs 1 through 37 above as though fully set forth herein.

48. This Count sets forth a claim pursuant to 42 U.S.C. §1983 against Defendant for violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

49. Plaintiff engaged in, and was perceived by Defendant to have engaged in, speech as a citizen upon matters of public concern. That speech consisted of communications with and concerning Michael Hollow, a candidate for the office of Sheriff of Lee County, regarding the operations of the Lee County Sheriff's Office and the conduct of Sheriff Marceno. The integrity and administration of an elected law enforcement agency, and the fitness of those seeking to lead it, are quintessential matters of public concern.

50. That speech was not made pursuant to Plaintiff's official duties. Plaintiff was a patrol deputy. Communicating with a candidate for Sheriff about the agency and its Sheriff was not within the scope of his ordinary responsibilities, was not made in accordance with or in

furtherance of those responsibilities, and was not a product that Defendant commissioned or created. Any member of the public could have engaged in the same speech.

51. To the extent Defendant contends that Plaintiff did not in fact communicate with Hollow or his campaign, that contention does not defeat this claim. Defendant subjected Plaintiff to a seven hour interrogation directed substantially at identifying the source of information reaching Marceno's political opponent, believed and perceived Plaintiff to be that source, and acted against him for that reason and in order to prevent and deter such communications. Defendant's motive, and the facts as Defendant understood them, are what govern.

52. Separately and in the alternative, Plaintiff objected to and complained about Sergeant Meyer's directive that Plaintiff not arrest Fort Myers Police Sergeant Jose Gomez for driving under the influence because of Gomez's status as a law enforcement officer, and about the resulting concealment of that stop. The extension of preferential treatment to law enforcement officers suspected of criminal conduct, and the concealment of such conduct by a Sheriff's Office, are matters of public concern. Plaintiff was never assigned or expected to investigate or report upon the conduct of other officers or of his command staff, and no policy of Defendant required or commissioned those objections.

53. Defendant had no adequate justification for treating Plaintiff differently from any other member of the general public on account of that speech. Plaintiff's speech caused no disruption to the operations of the Lee County Sheriff's Office, impaired no working relationship necessary to the performance of his duties, and did not interfere with the regular operation of the agency. Plaintiff's interest, and the public's interest, in that speech substantially outweigh any interest of Defendant in suppressing it.

54. In retaliation for that speech, and for Plaintiff's perceived engagement in it, Defendant opened a pretextual Internal Affairs investigation into Plaintiff, subjected him to a seven hour interrogation conducted outside his duty hours, misled him regarding his right to counsel, scheduled that interrogation so as to deprive him of mental health treatment he had requested, announced an intention to make an example of him, advised his counsel that it would review hundreds of hours of body worn camera footage in order to find a basis to terminate him, forced his resignation, and thereafter published a false and stigmatizing separation designation concerning him.

55. These actions would deter a person of ordinary firmness from exercising his First Amendment rights, and they were intended to and did chill Plaintiff's speech, deter the speech of other deputies, and punish Plaintiff for speech Defendant attributed to him. Plaintiff's protected speech, actual and perceived, was a substantial and motivating factor in each of these actions. Defendant would not have taken these actions in the absence of that speech.

56. Defendant is liable for these actions under *Monell*. Sheriff Marceno was the final policymaking authority for the Lee County Sheriff's Office as to the investigation, discipline, retention, and separation of deputies, and he personally directed, participated in, approved, or ratified the actions taken against Plaintiff. In the alternative, Undersheriff Holloway and Assistant Chief Deputy James Rankine exercised final policymaking authority delegated to them by Marceno over these subjects, and directed, participated in, approved, or ratified those actions, rendering their retaliatory animus attributable to Defendant. In the further alternative, Defendant maintained a custom and practice of retaliating against deputies perceived to be critical of, or politically opposed to, the Sheriff, of initiating pretextual internal affairs investigations against

them, and of failing to discipline the personnel who carried out such retaliation, and Defendant was deliberately indifferent to the constitutional violations that custom and practice caused.

57. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged. Those damages include grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, lost wages and other emoluments, embarrassment, humiliation, loss of reputation, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will most likely occur in the future. Plaintiff is entitled to equitable and injunctive relief and to an award of attorney's fees and costs under 42 U.S.C. §1988.

## COUNT III
## DEPRIVATION OF LIBERTY INTEREST WITHOUT DUE PROCESS
(42 U.S.C. §1983)

58. Plaintiff realleges and incorporates paragraphs 1 through 37 above as though fully set forth herein.

59. This Count sets forth a claim pursuant to 42 U.S.C. §1983 against Defendant for deprivation of Plaintiff's liberty interest in his good name, reputation, honor, and integrity without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

60. In connection with Plaintiff's separation from employment, Defendant made and published charges against Plaintiff that stigmatized him and that were false. Specifically, Defendant designated and reported Plaintiff's separation as a resignation while under investigation, notwithstanding that the Internal Affairs allegations against Plaintiff were unfounded, that Defendant had acknowledged to Plaintiff's counsel that it could not sustain those allegations, and that Defendant had represented to Plaintiff's counsel that it would not report adversely upon his separation.

61. Defendant published those charges. Defendant placed stigmatizing information in Plaintiff's personnel file and in its Internal Affairs file concerning Plaintiff, each of which is a public record under Florida law, and Defendant reported the stigmatizing separation designation to the Florida Department of Law Enforcement, where it is accessible to prospective law enforcement employers. Defendant knew and intended that prospective employers would obtain this information.

62. Those charges were made in conjunction with Plaintiff's constructive discharge and have imposed upon him a stigma that forecloses his freedom to take advantage of other employment opportunities in his chosen profession.

63. Defendant afforded Plaintiff no notice and no opportunity to be heard for the purpose of clearing his name, either before or after the stigmatizing charges were published, and has refused his efforts to have the designation corrected. Plaintiff was entitled to such a hearing and did not receive one.

64. Defendant is liable for this deprivation. Sheriff Marceno held final policymaking authority for the Lee County Sheriff's Office with respect to the separation of deputies and the reporting of separations to the State of Florida, and he directed, approved, or ratified the designation and its publication. In the alternative, Undersheriff Holloway and Assistant Chief Deputy James Rankine exercised final policymaking authority delegated to them over these subjects and directed, approved, or ratified the designation and its publication.

65. As a direct and proximate result of Defendant's actions, Plaintiff has suffered loss of reputation, loss of employment opportunities, lost wages and other emoluments, embarrassment, humiliation, mental anguish, and other tangible and intangible damages. Plaintiff is entitled to a

name clearing hearing, to correction of the separation designation, to compensatory damages, and to an award of attorney's fees and costs under 42 U.S.C. §1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 13th day of August 2026.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF



eFiled Lee County Clerk of Courts Page 16